IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Signature Marketing, Inc. d/b/a
Signature Manufacturing,**

      **Plaintiff,**

v.                                                  Case No. 15-7200-JWL

**New Frontier Armory, LLC; and
EXTAR, LLC,**

      **Defendants.**

## MEMORANDUM & ORDER

Plaintiff filed this suit alleging that defendants breached a contract between the parties under which plaintiff agreed to manufacture and provide custom firearm component parts to defendants in exchange for payment for those component parts. Defendants counterclaimed against plaintiff for breach of implied warranties. This matter is now before the court on plaintiff's motion to exclude the testimony of non-retained experts. In resolving the motion, the court assumes familiarity with the court's detailed memorandum and order resolving the parties' motions for summary judgment and the parties' factual showing on summary judgment. As will be explained, the motion is granted in part and denied in part.

*A.*     *Standard*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert testimony. *See id*. at 589–93*; see also Kumho Tire Co. Ltd. v. Carmichael*,

1

526 U.S. 137, 147–48 (1999).  The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In order to determine that an expert's opinions are admissible, this court must undertake a two-part analysis:  first, the court must determine that the witness is qualified by "knowledge, skill, experience, training, or education" to render the opinions; and second, the court must determine whether the witness's opinions are "reliable" under the principles set forth in *Daubert* and *Kumho Tire*. *See Ralston v. Smith & Nephew Richards, Inc*., 275 F.3d 965, 969 (10th Cir. 2001).  The rejection of expert testimony is the exception rather than the rule.  See Fed. R. Evid. 702 advisory committee notes.  Under Rule 702, "[t]he proponent of expert testimony bears the burden of showing" that its proposed expert satisfies these requirements, and district courts have considerable latitude in determining whether the proponent has satisfied this burden.  *See Heer v. Costco Wholesale Corp.*, 589 Fed. Appx. 854, 861 (10th Cir. 2014) (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *Kumho Tire*, 526 U.S. at 152).

B.      *Testimony about Alleged Defects*

In their expert disclosures, defendants express their intent to elicit testimony from Bryan Zeman, the owner of defendant EXTAR, LLC, and David Famiglietti, the owner of defendant

2

New Frontier Armory, LLC (NFA) concerning the alleged defective and non-compliant nature of the parts supplied by plaintiff. Specifically, the record reflects that Mssrs. Zeman and Famiglietti intend to testify about the following problems with the parts supplied by plaintiff: (1) the bolt carriers and gas keys provided by plaintiff were not plated prior to delivery, causing them to fail due to over-sized dimensions after plating was completed; (2) the cam pins provided by plaintiff failed after limited use because the central holes in the pins were drilled off-center; and (3) the bolts provided by plaintiff failed after limited use because the pin holes in the bolts were drilled off-center, the dimensions were grossly out of specifications approved by EXTAR, and plaintiff used an improper grade of steel in manufacturing the bolts such that the bolts were "too soft" for their intended purpose.[1]

In its motion to exclude, plaintiff does not lodge any objection to proposed testimony that the central holes in the cam pins and bolts provided by plaintiff were drilled off-center and that the off-centered holes, in whole or in part, caused the cam pins and bolts to fail after limited use. Neither does plaintiff lodge an objection to proposed testimony that the dimensions of the bolts were outside the scope of the dimensions approved or requested by EXTAR. With respect to Mr. Zeman's anticipated testimony concerning plaintiff's failure to plate the bolt carriers and gas keys prior to delivery, plaintiff asserts only that Mr. Zeman is not qualified to render any opinion about "metal plating processes." This objection is overruled. Mr. Zeman's deposition

---

[1] In their response to the motion to exclude, defendants also indicate that Mr. Zeman intends to testify that the firing pins provided by plaintiff failed after limited use because they were not properly heat treated and, accordingly, were too soft for their intended purpose. This alleged defect does not appear in the pretrial order and the proposed testimony does not appear in defendants' expert disclosures. Any claim based on this purported defect, then, has been waived and Mr. Zeman will not be permitted to offer that testimony.

testimony clearly indicates that he is not proffering an opinion about "metal plating processes." He testified that he requested that plaintiff supply bolt carriers and gas keys of a specific diameter; that the requested diameters included plating on the component parts; that plaintiff supplied bolt carriers and gas keys that met the requested diameters but were not plated; and that plating the component parts at that juncture added material (and size) to the surface of the parts such that the parts no longer met the required diameters.  Such testimony is well within the scope of Mr. Zeman's knowledge and experience as the manufacturer and designer of the short pistol and he does not purport to offer any specialized expertise about the plating process itself.

        The primary thrust of plaintiff's motion to exclude is aimed at Mr. Zeman's and Mr. Famiglietti's proposed testimony that the bolts failed because plaintiff used an improper grade of steel that was not suitable for the intended purpose of the bolts.  According to plaintiff, neither Mr. Zeman nor Mr. Famiglietti is remotely qualified to explain to the jury that the bolts failed because of the particular grade or type of steel used in manufacturing the bolts.  In response, defendants do not suggest that Mr. Famiglietti is qualified to testify as to this particular issue and it does not appear that they intend to elicit testimony on this issue from Mr. Famiglietti.  Indeed, Mr. Famiglietti's deposition testimony suggests only that NFA sent bolts supplied by plaintiff to a third-party in Las Vegas for hardness testing; that the third-party provided a "handwritten report" to plaintiff; and that the third-party is now deceased.  There is no indication in the record before the court that Mr. Famiglietti has any independent knowledge of any testing results; that he personally performed any hardness testing on bolts supplied by plaintiff; or that he has even formed any conclusions about the hardness of the bolts or the

4

material utilized for the bolts. Defendants, then, have not demonstrated that Mr. Famiglietti is qualified to offer testimony that plaintiff used an improper material for the bolts.

Defendants' expert disclosures indicate that Mr. Zeman will testify that "more appropriate steel (for example 8620) should have been used rather than the 4130 derivative" used by plaintiff and that the "improper material" caused the bolts to fracture and break after limited use. Plaintiff objects to this proposed testimony on the grounds that Mr. Zeman is not qualified to offer it—he has no degree in metallurgical engineering, materials science or any related degree and he has not established that he has any experience or knowledge relating to the hardness or strength properties of various metals. As noted earlier, it is defendants' burden to show that Mr. Zeman is qualified under Rule 702, *see Heer v. Costco Wholesale Corp.*, 589 Fed. Appx. 854, 861 (10th Cir. 2014), and the court concludes that they have not carried that burden with respect to this opinion. Defendants highlight that EXTAR produces "machined metal components" and that Mr. Zeman has "experience with every aspect of mechanical design, mechanical engineering." But defendants failed to explain the nature and extent of Mr. Zeman's experience or how that experience might relate to an understanding of the properties of various metals. The handful of pages submitted from Mr. Zeman's deposition does not demonstrate that Mr. Zeman possesses such experience or knowledge.

Defendants also contend that Mr. Zeman has knowledge that the material was unsuitable because he had some of the bolts subjected to "Rockwell" hardness testing. According to Mr. Zeman, the hardness testing—which was apparently performed by his brother—revealed that the bolts "were just way too soft" and "nowhere near usable hardness." He does not recall whether he personally participated in any of the hardness testing. Similarly, in response to one of

5

plaintiff's interrogatories, defendants assert that the tests performed by Mr. Zeman's brother revealed that "the parts lacked the requisite hardness."[2] If Mr. Zeman qualified as an expert under Rule 702, then he might be able to testify, under Rule 703, as to the testing performed by his brother and the results of that testing.  But there is nothing in the record before the court— and certainly nothing in the evidence marshaled by defendants—suggesting that Mr. Zeman has the requisite knowledge, skill, experience, training, or education to opine that the bolts supplied by plaintiff failed because the material used by plaintiff in manufacturing the bolts was too soft. There is no showing that Mr. Zeman has knowledge of how Rockwell testing is properly performed; how results are measured; or what specific results might suggest in terms of a bolt's suitability for the short pistol.  Mr. Zeman cannot simply rely on testing performed by a third-party as the basis for his purported "expertise" on the matter.

That having been said, Mr. Zeman may testify to facts demonstrating that EXTAR, subsequent to discovering that the bolts supplied by plaintiff were breaking apart after limited use, utilized bolts manufactured with an alternative metal and that those bolts did not break apart at the rate observed with plaintiff's bolts.  He is also permitted to testify that he personally observed plaintiff's bolts breaking apart or fracturing after limited use and that, as a result of that observation, he decided to have a third party perform hardness testing on the bolts.  Mr. Zeman may testify to facts suggesting that EXTAR provided material specifications to plaintiff indicating a desired hardness range.  But he is not qualified on this record to testify as to the

---

[2] The interrogatory response also indicates that additional hardness testing was performed by SGS MSi; that such testing confirmed that the parts lacked the requisite hardness; and that those testing results have been produced to plaintiff.  Plaintiff's motion does not address the admissibility of testimony concerning those specific tests.

6

results of any testing performed by third parties or to draw the conclusion that the material used by plaintiff was too soft and caused the bolts to break.   This aspect of plaintiff's motion, then, is granted.

C.      *Testimony about Lost Profits and Other Damages*

Defendants also seek to elicit testimony from Mr. Zeman and Mr. Famiglietti about damages sustained by their respective businesses.  Defendants' expert disclosures indicate that Mr. Zeman will testify about EXTAR's lost profits and that Mr. Famiglietti will testify about NFA's lost profits as well as costs incurred by NFA in connection with repairing and returning allegedly defective parts.  Defendants' expert disclosures also suggest that Mr. Zeman will testify about "stress" suffered by EXTAR as a result of plaintiff's provision of non-conforming parts as well as additional lost profits resulting from damage to EXTAR's business reputation. Mr. Famiglietti also intends to testify about damage to NFA's business reputation.

Plaintiff concedes that Mssrs. Zeman and Famiglietti, pursuant to Rule 701, may estimate lost profits using straightforward, common sense calculations based on their personal knowledge of their respective businesses.  *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216 (10th Cir. 2011) (citing *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929-30 (10th Cir. 2004)).  There is no evidence that Mr. Zeman intends to use sophisticated economic models in connection with his proposed testimony about EXTAR's lost profits.  The calculations set forth in the pretrial order indicate that Mr. Zeman has estimated EXTAR's lost profits by subtracting the per-unit cost of materials, supplies, labor, overhead and tax from the sale price of the pistol to reach a per-unit net profit figure and then multiplying that figure by the number of

7

pistols EXTAR expected to sell in the initial four-month sale period (2000 pistols per month). Given the simplicity of these calculations and Mr. Zeman's personal knowledge of the business, Mr. Zeman may testify as to lost profits. *See SolidFX, LLC v. Jeppesen Sanderson, Inc*., 2014 WL 983507, at *5-6 (D. Colo. Mar. 13, 2014) (plaintiff's CEO could properly testify under Rule 701 as to plaintiff's lost profits where there was no indication that projections relied on complex economic theories that she did not understand).

In any event, plaintiff does not appear to object to this aspect of Mr. Zeman's proposed testimony. Plaintiff objects to Mr. Zeman's testimony on lost profits only to the extent that he suggests that EXTAR suffered "stress" as a result of plaintiff's provision of non-conforming parts as well as additional lost profits resulting from damage to EXTAR's business reputation. Plaintiff urges that Mr. Zeman is not qualified to offer this opinion or any estimate of lost profits based on "stress" or damage to business reputation. The objection is moot. The pretrial order makes no reference to any claim for additional lost profits stemming from "stress" or relating to EXTAR's or NFA's business reputation. Any claim for such damages, then, has been waived and Mr. Zeman may not testify as to such losses. *See Professional Lens Plan, Inc. v. Polaris Leasing Corp*., 234 Kan. 742, 751 (Kan. 1984) (citing White & Summers, *Uniform Commercial Code* § 11–6 at 409 (2d ed. 1980) (consequential economic loss includes loss of good will or business reputation); *Wilson v. Muckala,* 303 F.3d 1207, 1215 (10th Cir. 2002) (theories of damages not included in the pretrial order are waived).[3]

---

[3] For the same reason, Mr. Famiglietti may not testify about damage to NFA's business reputation.

In the absence of any other specific objection to Mr. Zeman's testimony on lost profits, the court turns to Mr. Famiglietti's proposed testimony.  The specific calculations as set forth in the pretrial order indicate that Mr. Famiglietti has estimated NFA's lost profits by subtracting the cost of purchasing the pistol from EXTAR from the anticipated sale price of the pistol and multiplying that figure by the number of pistols that NFA expected to sell during a one-year period.  The pretrial order, however, indicates that the anticipated sale price of the pistol varied depending on whether NFA expected to sell a given pistol to a distributor, a dealer or a retailer.  Toward that end, NFA estimates that it would have sold 250 pistols per month to distributors at a certain price level; 500 pistols to dealers at higher pricing levels; and 250 pistols to "retail nationwide" at the highest price level.  According to plaintiff, Mr. Famiglietti's proposed testimony on this multi-tiered pricing scheme (particularly with respect to nationwide pricing for firearms) is beyond the testimony permitted under Rule 701 for business owners and Mr. Famiglietti is not qualified to provide it under Rule 702.  The court disagrees.

Mr. Famiglietti's deposition testify reflects that he has personal knowledge based on his experience in the industry about the price points of NFA's products at the distributor, dealer and retail levels.  Mr. Famiglietti testified that NFA was a "pioneer" in the firearms industry in terms of competitive pricing for the quality of product manufactured by NFA and that NFA was routinely able to sell its products to distributors, dealers and retailers as fast as it was able to produce them.  He testified that NFA's primary market was the retail market as opposed to the wholesale market, further supporting the conclusion that Mr. Famiglietti has sufficient knowledge of retail pricing for NFA's products.  Moreover, Mr. Famiglietti testified that he had experience with marketing firearms and firearm components in advance of a release date

9

(including sending out test products to consumers and wholesalers) to ensure high demand for those products upon release. To the extent, then, that Mr. Famiglietti seeks to testify about expected profits based on the anticipated sales price of the short pistol at the retail level, that testimony clearly falls within the scope of his experience with and management of NFA. The testimony, then, is admissible under Rule 701. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216 (10th Cir. 2011) (citing *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929-30 (10th Cir. 2004)).

Mr. Famiglietti also intends to testify about costs incurred by NFA in connection with repairing and returning allegedly non-conforming parts provided by plaintiff. As detailed in the pretrial order, these expenses include shipping costs; the purchase price of parts returned to plaintiff; the cost of ammunition used during a test fire of the short pistols; "administrative labor costs" associated with the recall, repair and return of 500 pistols; and "repair labor costs" associated with the recall, repair and return of 500 pistols as well as the repair of certain bolts. The only specific objection asserted by plaintiff with respect to the proposed testimony concerns NFA's claimed "labor costs."[4] Plaintiff contends that testimony concerning administrative or repair labor costs "requires a credentialed individual to study variables that go into overhead" and is "not a simple mathematical equation." The record before the court is devoid of any indication as to how NFA calculated the labor costs set forth in the pretrial order. The court assumes that NFA's reference to "labor costs" simply means the costs incurred for extra hours

---

[4] Plaintiff objects generally to the costs identified in the pretrial order on the grounds that NFA has failed to provide "back up documentation" supporting the specific amounts identified by NFA. This objection, however, is not properly raised or resolved in the context of a *Daubert* motion.

10

worked by NFA employees (or, more likely, Mr. Famiglietti himself) performing tasks related to problems with the components produced by plaintiff.  Assuming that Mr. Famiglietti has personal knowledge of the number of hours worked on these tasks and the corresponding value of those hours, then the testimony is admissible under Rule 701.

Finally, NFA indicates in its response to the motion that Mr. Famiglietti will testify about plaintiff's claim in the pretrial order that NFA owes plaintiff more than $13,000 in unpaid invoices.  According to NFA, Mr. Famiglietti has personal knowledge of errors in plaintiff's accounting as it relates to that purported outstanding balance.  In reply, plaintiff contends that Mr. Famiglietti is not qualified to testify about any asserted errors in plaintiff's accounting because he is not an accountant.  Because this aspect of Mr. Famiglietti's proposed testimony is not set forth in the disclosure and, accordingly, was not fleshed out in plaintiff's motion, the court cannot fully resolve the issue on the record before it.   To the extent Mr. Famiglietti personally worked through the purported discrepancies relating to the invoices submitted by plaintiff to NFA and the deposits submitted by NFA to plaintiff, he certainly may testify as to his knowledge of those discrepancies.  Plaintiff may lodge contemporaneous objections, as appropriate, to any specific testimony offered by Mr. Famiglietti concerning any analysis by or findings of his accountant.

D.    *Testimony about Plaintiff's Use of Multiple Entities to Machine Parts*

Defendants intend to elicit testimony from Jeremiah Sisney and Martin Oehmler concerning plaintiff's quality control procedures and, more specifically, plaintiff's use of multiple contracting entities to machine parts.  Mr. Sisney works for Machine Laboratory, LLC

and Mr. Oehlmer works for Microtool, Inc. The record reflects that plaintiff retained Machine Laboratory, LLC and Microtool, Inc. to machine a number of parts relating to the short pistol project. As set forth in defendants' disclosures, defendants describe the proposed testimony of these witnesses as follows:

> It is anticipated testimony will be elicited that the fact of using multiple contracting entities to machine and heat treat the parts at issue increases the potential for defective and non-conforming parts by spreading thin quality control measures between multiple entities. This gives rise to whether specifications were properly communicated to the contracting entities so as to avoid deviations from the specifications which would result in the failure of the component parts.

As reflected in the disclosures, then, defendants seek to have both witnesses testify as to the same subject matter.

Plaintiff moves to exclude the testimony of Mr. Sisney and Mr. Oehmler for two reasons. First, plaintiff contends that the testimony is unreliable because it is based on speculation that plaintiff's use of multiple entities to machine parts caused the alleged defects in those parts when, in fact, there is no evidence that plaintiff's decision to use other entities to perform certain work caused the alleged defects. Second, plaintiff contends that the testimony should be excluded because Mssrs. Sisney and Oehmler, in light of the substance of the opinions to be offered and irrespective of their designation as "non-retained" experts, were required to file expert reports under Rule 26(a)(2)(B) but did not file expert reports. The court rejects both arguments.[5]

---

[5] In its reply brief, plaintiff argues for the first time that the testimony of Mr. Sisney and Mr. Oehmler should be excluded because they lack personal knowledge of plaintiff's quality control procedures. The court does not construe defendants' disclosures as contemplating testimony about plaintiff's quality control processes beyond plaintiff's use of multiple entities to machine parts.

As the court indicated in connection with the parties' summary judgment motions, the issue of whether plaintiff's use of multiple entities to machine parts caused the defects alleged by defendants has no bearing on plaintiff's liability or the damages that defendants may recover based on that liability. Causation is not an issue that the jury will be asked to resolve. The court, then, rejects the argument that the proposed testimony must be excluded because there is insufficient evidence supporting the idea that plaintiff's use of multiple entitles caused the asserted defects. Nonetheless, to the extent defendants seek to elicit testimony that the use of multiple entities to machine parts generally contributes to a rise in the potential for product defects, that testimony is relevant for the purpose of corroborating or bolstering defendants' claim that plaintiff failed to provide goods that met the particular purpose for which the goods were bought and/or that plaintiff failed to provide merchantable goods or goods fit for their intended purpose.

That having been said, defendants have not suggested that the relevance of the proposed evidence is so significant that they need both Mr. Sisney and Mr. Oehmler to testify on the subject. Defendants' disclosures demonstrate that Mr. Sisney and Mr. Oehlmer will provide identical (and thus cumulative) testimony concerning the use of multiple entities to machine parts and the increased potential for defective parts. Pursuant to Rule 403 of the Federal Rules of Evidence, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of, among other things, wasting time or needlessly presenting

cumulative evidence.  *See* Fed. R. Evid. 403.  The court, then, would not permit the testimony of both Mr. Sisney and Mr. Oehlmer on this subject.[6]

Plaintiff's argument that the experts should be precluded from testifying because they failed to file expert reports as required by Rule 26(a)(2)(B) is rejected because that argument is untimely presented to the court and has been waived.  The scheduling order issued in this case required that any objections to expert disclosures must be filed within 14 days after service of the disclosures.  That provision in the scheduling order expressly included "objections related to the sufficiency of the written expert disclosures, (e.g., whether all of the information required by Rule 26(a)(2)(B) has been provided)."  Defendants' designations were served on plaintiff on November 30, 2015.  No objection was ever filed by plaintiff.  Thus, the argument presented at this juncture that the expert disclosures are not sufficient with respect to Mssrs. Sisney and Oehmler is clearly untimely and has been waived.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion in limine to exclude proffered non-retained expert testimony (doc. 151) is granted in part and denied in part.

---

[6] Defendants' disclosures indicate that Mr. Sisney and Mr. Oehlmer will also be called to testify as to "whether specifications were properly communicated to the contracting parties so as to avoid deviations from the specifications which would result in the failure of the component parts."  To the extent these witnesses seek to testify as to facts within their personal knowledge about what plaintiff communicated to Machine Laboratory or Microtool about the requisite specifications for the parts at issue, such testimony would not appear to constitute expert testimony and the court expresses no opinion on the admissibility of such testimony at this juncture.

14

**IT IS SO ORDERED.**


Dated this 4th day of January, 2017, at Kansas City, Kansas.


                                              s/ John W. Lungstrum
                                              John W. Lungstrum
                                              United States District Judge